IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HEATHER SWANSON and ONEIDA HEALTH, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>MIKE HILGERS and CHARITY MENEFEE, in their official capacities,<br><br>    Defendants. | **4:24CV3072**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendants Mike Hilgers and Charity Menefee's (together, the "State") Motion to Dismiss (Filing No. 11) plaintiffs Heather Swanson ("Swanson") and Oneida Health, LLC's ("Oneida Health" and together, the "plaintiffs") Complaint (Filing No. 1) for lack of standing and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). The plaintiffs oppose dismissal on either ground (Filing No. 17). For the reasons stated below, the motion is granted in part and denied in part, and this case is dismissed.

I.    **BACKGROUND**[1]

Swanson is a Certified Nurse Midwife ("CNM") and Nurse Practitioner in Long Pine, Nebraska. She owns and operates Oneida Health, a family nurse practitioner practice. She has more than "20 years of training and experience in midwifery, nursing, and medicine" and has obtained "a Bachelor of Science in Nursing, a Master of Science in Nursing with a Midwifery Specialty, and a Doctor of Nursing Practice." Her "calling is to provide childbirth services to Nebraska women, including those that require home birth assistance."

---

[1]The factual background is primarily drawn from the Complaint.

Swanson states she stands ready "to provide safe and accessible childbirth services to women who wish to experience a home birth" in Nebraska but is prevented from doing so by Nebraska's Certified Nurse Midwifery Practice Act (the "Act"), Neb. Rev. Stat. § 38-601 *et seq.* In particular, she states she and Oneida Health are unable to provide needed childbirth services "due to state laws that: (1) require CNMs to obtain a supervision agreement with a local physician and (2) forbid CNMs from attending home births even if under the supervision of a physician." *See* Neb. Rev. Stat. §§ 38-612(2), 38-613(3)(b). In Swanson's view, those provisions of the Act "violate the Due Process of Law, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment."[2]

On April 16, 2024, the plaintiffs sued Hilgers, Nebraska's Attorney General, and Menefee, the Director of the Division of Public Health for the Nebraska Department of Health and Human Services, in their official capacities based on their respective roles in enforcing Nebraska law and "regulating health-related professions and facilities in" Nebraska. Swanson states she seeks "to vindicate her constitutional rights and the rights of the mothers she wishes to serve" under 42 U.S.C. § 1983.

On May 29, 2024, the State moved to dismiss the Complaint with prejudice, contending the plaintiffs do not have standing to assert the rights of the mothers they want to serve, *see* Fed. R. Civ. P. 12(b)(1), and fail "to state any plausible claim upon which relief can be granted," *see* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). The plaintiffs maintain their claims are properly raised because they have third-party standing and plausibly state grounds for the relief sought.

---

[2]The plaintiffs concede "that the Supreme Court's opinion in *Slaughter-House Cases*, 83 U.S. 36 (1872), forecloses their Privileges or Immunities cause of action." They state they simply want to "preserve their arguments for potential appellate review."

2

## II.    DISCUSSION

### A.    Standing

"The party invoking federal jurisdiction has the burden of establishing that [they have] standing to assert [their] claim." *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). Standing is—at heart—a question of "whether a litigant is entitled to have a federal court resolve [their] grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) ("The doctrine of standing limits the jurisdiction of federal courts to 'those disputes which are appropriately resolved through the judicial process.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The standing "inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also Braden*, 588 F.3d at 591 (describing the prudential elements as "self imposed limits on judicial power").

"When considering a motion under Rule 12(b)(1), a court is to consider whether a party is asserting a 'facial attack' or a 'factual attack' on jurisdiction." *Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 813 (8th Cir. 2024) (quoting *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016)). "If it is a facial attack, the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6)." *Id.* "The plaintiff must assert facts that affirmatively and plausibly" establish federal jurisdiction. *Stalley*, 509 F.3d at 521.

"In a factual attack, the court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations omitted); *see also Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (explaining a court "may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute"). "[T]the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.

2018).  In either case, the Court will not lightly dismiss a complaint for a lack of subject-matter jurisdiction.  *See Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996).

Neither party in this case mentions the facial/factual dichotomy, but their submissions indicate a facial attack on the plaintiffs' standing—even if a limited one.[3]  In its reply, the State clarifies that it concedes the plaintiffs have standing to challenge the Act and its implementing regulations as it pertains to their own rights.  But it challenges the plaintiffs' alleged third-party standing to litigate "'the manner and circumstances of giving birth' of [the plaintiffs'] future pregnant patients."  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (confirming "a plaintiff must demonstrate standing for each claim [she] seeks to press").  The State urges the Court to reject the plaintiffs' purported attempt "to marry [their] nonfundamental right[s] to someone else's right" as a way to subject the challenged provisions of the Act to strict scrutiny.

In essence, the State challenges Swanson's prudential standing to vindicate "the rights of the mothers she wishes to serve."  Historically, some uncertainty existed as to "whether prudential standing is a waivable exercise in judicial self-restraint or a jurisdictional bar 'determining the power of the court to entertain the suit.'"  *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 938 (8th Cir. 2013) (quoting *Urban Contractors Alliance of St. Louis v. Bi-State Dev. Agency*, 531 F.2d 877, 881 (8th Cir. 1976)).  That uncertainty led to a longstanding circuit split.  *See id.* (declining to decide the issue); *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 185 (D.C. Cir. 2012) (Kavanaugh, J., dissenting) (listing cases); *Lewis v. Alexander*, 685 F.3d 325, 340 n. 14 (3d Cir. 2012) (same).

In *June Medical Services L.L.C. v. Russo*, the Supreme Court ostensibly resolved the dispute, concluding prudential limits on third-party standing do "not involve the Constitution's 'case-or-controversy requirement'" and "can be forfeited or waived."  591

---

[3]For example, neither party offers any evidence, otherwise looks outside the pleadings, or raises a factual dispute.  *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (refusing to "constrain the power of a court hearing a 12(b)(1) motion").

4

U.S. 299, 317 (2020) (plurality opinion) (quoting *Kowalski*, 543 U.S. at 129), *abrogated by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 2d 545 (2022); *June Medical*, 591 U.S. at 358 (Roberts, C.J., concurring in the judgment); *Id.* at 366 (Thomas, J., dissenting); *id.* at 378 (Alito, J., joined in part by Thomas, Gorsuch, and Kavanaugh, J.J., dissenting); *id.* at 413 (Gorsuch, J., dissenting); *id.* at 429 n.2 (Kavanaugh, J., dissenting). In light of that decision, the third-party standing question the State raises does not appear to involve the jurisdictional issues that implicate Rule 12(b)(1). *See Warth*, 422 U.S. at 498; *Faibisch*, 304 F.3d at 801 (concluding "a standing argument implicates Rule 12(b)(1)" if it would deprive the Court of subject-matter jurisdiction). In the end, the question is not critical here given the limited scope of the State's motion and the facial nature of the dispute before the Court. *See Warth*, 422 U.S. at 501 (stating that courts "ruling on a motion to dismiss for want of standing" generally "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party").

With that, the Court turns to the plaintiffs' allegations. The plaintiffs assert "the challenged regulations unconstitutionally burden both the fundamental right of expecting mothers to choose a safe place and manner of giving birth and [their own right] to provide childbirth services." Regulations infringing fundamental rights or operating "to the peculiar disadvantage of a suspect class" are subject to strict scrutiny, while most other regulations are subject to rational-basis review. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313-14 (1976); *see also 301, 712, 2103 & 3151 LLC v. City of Minneapolis*, 27 F.4th 1377, 1384 (8th Cir. 2022). Fundamental rights are those that "are, objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion)).

The parties not only dispute the propriety of treating the individual's choice of the place and manner of giving birth as a fundamental right but also whether the plaintiffs have third-party standing to raise that right on behalf of their potential future customers. The

State makes a fairly strong argument the right asserted is not fundamental, noting neither the Supreme Court nor Eighth Circuit has so held.  *See, e.g., Lange-Kessler v. Dep't of Educ. of N.Y.*, 109 F.3d 137, 142 (2d Cir. 1997) (explaining the Supreme Court "has not interpreted the right to privacy so broadly that it encompasses the right to choose a particular healthcare provider"); *see also Birchansky v. Clabaugh*, 955 F.3d 751, 756 (8th Cir. 2020) (concluding "the right to receive treatment from a particular provider at a particular facility" is not fundamental).  Nor have other courts been persuaded that the right is fundamental.  *See, e.g., Lange-Kessler*, 109 F.3d at 142 (holding the right to privacy "does not encompass the right to choose a [particular type of] midwife to assist with childbirth"); *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995) (concluding "the interest of the parents in selecting a midwife of their choice" is not fundamental); *Des Moines Midwife Collective v. Iowa Health Facilities Council*, No. 4:23-CV-00067-SMR-HCA, 2024 WL 2747758, at *5-*6 (S.D. Iowa May 29, 2024) (joining the cited state and federal courts that have rejected the assertion that "the right to choose the place and manner of giving birth is fundamental").

Regardless, the plaintiffs fail to show they have third-party standing to assert any such rights.  Third-party standing is largely disfavored.  *See Kowalski*, 543 U.S. at 130.  Ordinarily, a party must assert their "own legal rights and interests, and cannot rest [a] claim to relief on the legal rights or interests of third parties."  *Kowalski*, 543 U.S. at 129 (quoting *Warth*, 422 U.S. at 499); *see also United States v. Hansen*, 599 U.S. 762, 769 (2023); *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 80 (1978) ("There are good and sufficient reasons for this prudential limitation on standing when rights of third parties are implicated—the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them.").

Still, the rule is not absolute.  *Kowalski*, 543 U.S. at 129-30.  A limited exception may apply if (1) "the party asserting the right has a 'close' relationship with the person who

possesses the right" and (2) "there is a 'hindrance' to the possessor's ability to protect [their] own interests." *Id.* at 130. The Supreme Court has also been more forgiving "when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Id.* (quoting *Warth*, 422 U.S. at 510).

Here, the plaintiffs contend they "appropriately assert the rights of their prospective patients in this action." As they see it, "by restricting CNM's ability to operate and provide homebirth services, the challenged restrictions burden the right of expecting mothers to choose the circumstances and manner of giving birth." They say those mothers will "have fewer options for birth attendants and may be forced to secure the services of attendees with less formal training and fewer qualifications." The plaintiffs' arguments miss the mark.

First, it is not easy to show a close relationship when invoking the rights of a prospective customer as opposed to an existing one. *See Kowalski*, 543 U.S. at 131 (noting the stark distinction between an "*existing* attorney-client relationship" and "the *hypothetical* attorney-client relationship posited" in that case—which was "no relationship at all"). And the plaintiffs barely try.

Second, whatever the plaintiffs' relationship with their hypothetical customers, it is not entirely clear that their respective interests fully align with regard to the specific provisions the plaintiffs challenge. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15 (2004) (explaining third-party standing may not be proper when a potential conflict exists between the interests of the plaintiff and the third party), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). For example, the plaintiffs' stated interests in avoiding the difficulty and costs of obtaining collaboration agreements with a licensed practitioner arguably conflict with their potential customers' broader interests in health and safety. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379-80 (2024) ("[T]he standing doctrine serves to protect the 'autonomy' of those who are

7

most directly affected so that they can decide whether and how to challenge the defendant's action.").

Finally, the plaintiffs do not adequately articulate the type of compelling "hindrance necessary to allow" them to assert their hypothetical customers' rights. *Kowalski*, 543 U.S. at 132. "The test for 'hindrance' is a question of 'the likelihood and ability of the third parties . . . to assert their own rights.'" *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) (quoting *Powers v. Ohio*, 499 U.S. 400, 414 (1991)). To prove hindrance, the plaintiff "must show that some barrier or practical obstacle (e.g., third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest.'" *Id.* (quoting *Benjamin v. Aroostook Medical Ctr., Inc.*, 57 F.3d 101, 106 (1st Cir. 1995)).

The plaintiffs summarily contend "[e]xpectant mothers are hindered from asserting their own rights by the time-sensitive nature of childbirth," but they do not elaborate on what specifically hinders their prospective customers' ability to protect their own rights and interests as a practical matter, let alone show that the challenged regulations deprive prospective parents of "the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski*, 543 U.S. at 129. It is not enough to say that "the very same allegedly illegal act that affects the litigant also affects a third party." *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720 (1990).

From the start, the plaintiffs' argument is belied to some degree by those cases in which prospective parents have joined midwives as plaintiffs in challenging similar regulations related to childbirth. *See*, *e.g.*, *Lange-Kessler*, 109 F.3d at 139. It would surpass strange to find that practical barriers warrant third-party standing "if the third party actually" has asserted their own rights. *Hodak*, 535 F.3d at 904-05 (8th Cir. 2008) ("Other circuits agree that if a third party actually asserts his own rights, no hindrance exists, and third-party standing is improper.").

8

Of course, in certain circumstances, courts have "permitted abortion providers to invoke the rights of their actual or potential patients in challenges to abortion-related regulations." *June Medical*, 591 U.S. at 318. But that practice does not mean that merely invoking childbirth or reproductive health automatically creates third-party standing. *See Kowalski*, 543 U.S. at 129-30. The Court must consider the facts of each case in determining whether the limited exception for third-party standing applies. *See Kowalski*, 543 U.S. at 129-30. And the plaintiffs in this case fail to show how the challenged regulations on midwives involve the same type of hindrances that have historically justified third-party standing for abortion providers and other regulated parties. *See June Medical*, 591 U.S. at 318. What's more, the decision in *Dobbs* at least casts some doubt on existing precedent regarding third-party standing related to the regulation of reproductive-health services. *See Dobbs*, 597 U.S. at 286-87 (stating that some of the Supreme Court's abortion cases had ignored its "third-party standing doctrine").

The Supreme Court's usual aversion to third-party standing "represents a 'healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed,' the courts might be 'called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.'" *Kowalski*, 543 U.S. at 129, 132 (first quoting *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, n.5 (1984), then quoting *Warth*, 422 U.S. at 500). Those concerns abound in this case.

On this record, the plaintiffs do not have third-party standing to "vindicate" the rights of their prospective customers. *See Hughes v. City of Cedar Rapids*, 840 F.3d 987, 992 (8th Cir. 2016) (concluding the plaintiff did not "have third-party standing" where he failed "to show a hindrance to his wife's ability to protect her own interests"). That leaves the plaintiffs' first-party claims subject to rational-basis review. *See Romer v. Evans*, 517 U.S. 620, 631 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect

class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."); *accord Birchansky*, 955 F.3d at 757 ("We will uphold a state law that does not draw a suspect classification or restrict a fundamental right against an equal protection or substantive due process challenge if it is rationally related to a legitimate state interest.").

### B.    Failure to State a Plausible Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding such a motion, "'[t]he [C]ourt may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (alteration in original) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court accepts the plaintiffs' factual allegations—but not their legal conclusions—as true. *Id.* A complaint that alleges facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. The plaintiff must provide "sufficient factual information to provide" a basis for each claim "and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). If she doesn't, her claims must be dismissed. *See Twombly*, 550 U.S. at 555.

The plaintiffs assert that even without a fundamental right, dismissal is improper in this case. They contend they should be allowed to "seek discovery and prove that the challenged regulations fail rational basis scrutiny." In their view, "Nebraska lacks any reasoned basis for" the challenged regulations. More specifically, they argue "the

homebirth prohibition and physician supervision provisions are not a rational means to achieve any legitimate government end because they are not related to a provider's fitness, nor do they advance any health or safety interests." The plaintiffs see them solely as "economic protectionism" for physicians.

In contrast, the State highlights the three key legislative findings underlying the Act:

> The Legislature hereby finds and declares that the Certified Nurse Midwifery Practice Act is necessary to safeguard public life, health, safety, and welfare, to assure the highest degree of professional conduct by practitioners of certified nurse midwifery, and to insure the availability of high quality midwifery services to persons desiring such services.

Neb. Rev. Stat. § 38-602. According to the State, those findings rationally relate the challenged regulations "to a legitimate end—protecting the health and well-being of patients, including Nebraska mothers during childbirth and their babies." The State contends the plaintiffs' claims raise policy questions that invade the province of the legislature and thus are properly dismissed without discovery. *See Heller v. Doe*, 509 U.S. 312, 320 (1993) (clarifying that a state "has no obligation to produce evidence to sustain the rationality of a statutory classification"); *Gilmore v. County of Douglas*, 406 F.3d 935, 937 (8th Cir. 2004) (reiterating "that because 'all that must be shown is any reasonably conceivable state of facts that could provide a rational basis for the classification, it is not necessary to wait for further factual development' in order to conduct a rational basis review on a motion to dismiss" (quoting *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004)).

The State finds support in *Gorenc v. Klaassen*, 421 F. Supp. 3d 1131, 1160-61 (D. Kan. 2019), in which the district court dismissed the plaintiff midwives' due-process and equal-protection challenges to a collaborative-practice regulation and other restrictions because the limitations furthered "a legitimate state interest"—protecting "the health and welfare of the public, such as mothers and children who may seek the services of a midwife." In reaching that conclusion, the court reasoned that it "'must not interfere

11

with'" the challenged regulations because "'it is for the legislature, not the courts, to balance the advantages and disadvantages' of the restrictions on plaintiffs' licenses." (alteration omitted) (first quoting *Younger v. Colo. State Bd. of L. Exam'rs*, 625 F.2d 372, 377 (10th Cir. 1980), then quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487 (1955)); *accord Sammon*, 66 F.3d at 646. That same logic applies here.

The plaintiffs' unbridled assertions that "the challenged regulations are solely protectionist" and "bear no connection to the government's stated goals" border on frivolous. *See Birchansky*, 955 F.3d at 757 (stating a "law's rational relation to a state interest need only be conceivable"). And their remaining arguments about whether the regulations actually "contribute to public health or safety" or are as effective as possible are precisely the type of balancing questions committed to the legislature. *See Williamson*, 348 U.S. at 487; *Birchansky*, 955 F.3d at 758 ("A law supported by some rational basis does not offend the constitution merely because it is imperfect, mathematically imprecise, or results in some inequality."); *United Hosp. v. Thompson*, 383 F.3d 728, 733 (8th Cir. 2004) ("The perfect must not become the enemy of the good.").

The plaintiffs repeatedly question the challenged provisions' efficacy and offer what they see as a better way to reach the Act's goals. But that is not this Court's call to make. *See Dobbs*, 597 U.S. at 301 (stating courts must uphold a health and safety law "if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests"); *Danker v. City of Council Bluffs*, 53 F.4th 420, 425 (8th Cir. 2022) (explaining that courts conducting rational-basis review "cannot second guess or judge" the wisdom or "fairness of legislative choices").

"On rational-basis review," legislative decisions regarding health and safety bear "a strong presumption of validity, and those attacking the rationality of" those decisions "have the burden to negative every conceivable basis that might support it.'" *Id.* at 423 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993)); *see also Gallagher v. City*

*of Clayton*, 699 F.3d 1013, 1020 (8th Cir. 2012) (noting the defendant would have to meet that onerous burden even if the defendant's asserted rationales failed rational-basis review). "Where there are plausible reasons for [the legislature's] action, [the Court's] inquiry is at an end." *Birchansky*, 955 F.3d at 757 (first alteration in original) (quoting *FCC*, 508 U.S. at 313-14). Such is the case here.

Based on the foregoing,

IT IS ORDERED:

1. Defendants Mike Hilgers and Charity Menefee's Motion to Dismiss (Filing No. 11) is granted in part and denied in part.

2. Plaintiffs Heather Swanson and Oneida Health, LLC's first-party claims are dismissed with prejudice.

3. Their purported third-party claims for their prospective customers are denied without prejudice to any claim those customers might raise on their own.

Dated this 9th day of September 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge